# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIE WILLIAMSON, | : |
| *Plaintiff,* | : CIVIL ACTION |
| | : |
| v. | : NO. 18-3522 |
| | : |
| CYNTHIA LINK, | : |
| *Defendant.* | : |

## **MEMORANDUM AND ORDER**

In this civil rights action, Defendant Cynthia Link moves for summary judgment on the ground that Plaintiff Willie Williamson did not exhaust his administrative remedies. (ECF No. 14.) Williamson did not respond to the summary judgment motion. The Court therefore treats the facts stated in Link's Statement of Undisputed and Undisputable Material Facts (ECF No. 14-1) as undisputed for proposes of resolving this Motion. *See* Fed. R. Civ. P. 56(e)(2); *see also Chestnut v. Finck*, 722 Fed. App'x 115, 119 (3d Cir. 2018) (where plaintiff "failed to dispute the defendants' statement of material facts, the District Court properly deemed those facts admitted"). Because those undisputed facts establish that Williamson did not exhaust his remedies, the Court grants the motion and enters summary judgment on the remaining count against Link.

I.  FACTS

   A.  **Williamson Suffered An Injury While Incarcerated.**

During the relevant time, Williamson was incarcerated at the State Correctional Institution at Graterford ("SCI-Graterford"). (ECF No. 14-1 ¶ 1.) On August 25, 2016, Williamson transferred to C Block in the prison. (*Id.* ¶ 4.) At that time, Williamson was assigned to "bottom bunk status" due to a pre-existing medical condition. (*Id.* ¶ 5.) During the move to a new cell,

Williamson received an index card that identified his new cell assignment but not his bottom bunk status. (*Id.* ¶ 6.) When Williamson arrived at his new cell, an absent cellmate's bed linens were already on the bottom bunk. (*Id.* ¶ 7.) Williamson told a guard that he had bottom bunk status, and the guard directed Williamson to the C Block's unit manager's office. (*Id.* ¶ 8.)

The unit manager was not in his office, but two other individuals were. (*Id.* ¶ 9.) Williamson reported to them that he had bottom bunk status, and one of the individuals in the office, a Sgt. Nyce, told Williamson to "[d]o what you can do." (*Id.* ¶¶ 11-12). When Williamson returned to his cell, his cellmate ignored Williamson's claim that he needed the bottom bunk. (*Id.* ¶ 13.) Williamson tried to climb to the top bunk and fell, injuring his left shoulder. (*Id.* ¶ 14.) Afterwards, Williamson's cellmate agreed to let Williamson use the bottom bunk. (*Id.* ¶ 15.) A few days later, Williamson submitted a sick call slip and visited a healthcare provider. (*Id.* ¶ 16.) According to his medical records, Williamson first reported an injury to his left shoulder on September 8, 2016, and he first reported that he slipped while climbing onto a top bunk on October 4, 2016. (*Id.* ¶ 18.) When making these reports, Williamson did not claim that his fall and resulting injury were related to a lack of access to a bottom bunk. (*Id.* ¶¶ 19, 31.)

### B. Williamson Failed To Follow The Prison's Administrative Procedures To Grieve About His Injury.

At the time of Williamson's fall and injury, SCI-Graterford had procedures in place for inmates to submit grievances. The applicable grievance policy went into effect in May 2015. (*Id.* ¶ 20.) That policy permitted Williamson to grieve about how Sgt. Nyce responded to Williamson's concerns and about any policy or practice that Williamson believed that Sgt. Nyce followed. (*Id.* ¶¶ 21, 23.) The policy also allowed Williamson to request damages for his injury resulting from his fall after trying to climb to the top bunk. (*Id.* ¶ 22.) If Williamson wanted to file a grievance, he had to do so within fifteen (15) days, using a special form. (*Id.* ¶ 25.) The grievance forms

were available in multiple locations, and bins with the forms were stocked as needed and checked daily. (*Id.* ¶¶ 26, 27.) The grievance policy required that Williamson identify the problem, identify who was involved, and set forth any monetary damages requested. (*Id.*)

Williamson knew or should have known all of this. On July 21, 2016, Williamson signed a receipt indicating that he received a copy of the inmate handbook that contained information about the applicable grievance procedure, but he never read the handbook. (*Id.* ¶ 28.) Nonetheless, during his time at SCI-Graterford, Williamson filed numerous grievances, including one that was filed just weeks before his fall. (*Id.* ¶¶ 29, 30.) Despite knowing how to submit a grievance pursuant to the applicable policy, Williamson never submitted a grievance related to the events at issue in this case. (*Id.* ¶¶ 17, 24.)

### C. **Williamson Filed Suit Due To His Injury.**

Rather than follow the prison's established grievance policy, on August 20, 2018, Williamson filed this lawsuit. (ECF No. 1.) At the time he filed suit, Williamson was incarcerated at the George W. Hill Correctional Facility in Delaware County, Pennsylvania. (ECF No. 14-1 ¶¶ 33-34.) The Amended Complaint, which is the operative pleading, raised the following claims: 1) Count I – Section 1983 claim based on an alleged Eighth Amendment violation and a substantive due process violation of the Fourteenth Amendment; 2) Count II – various state common law claims; and 3) Count III – federal claims mirroring those in Count I but focusing on respondeat superior liability due to policies/procedures/training. (ECF No. 1.) Link moved to dismiss all but the Eighth Amendment claim against her, and Williamson's counsel wrote to the Court, advising that Williamson did not oppose Link's partial Motion to Dismiss. (ECF No. 10.) On November 29, 2018, the Honorable Juan R. Sánchez granted Link's motion, dismissing all federal and state

law claims against Link with prejudice except for Williamson's Eighth Amendment claim in Count I. (ECF No. 11.)

On May 30, 2019, Link filed a Motion for Summary Judgment, seeking judgment in her favor on Williamson's remaining claim based on failure to exhaust his administrative remedies. (ECF No. 14.) Williamson's response was due by June 13, 2019. *See* Local Civil Rule 7.1(c). Williamson never filed an opposition to Link's Motion, which is now ripe for disposition.

## II.     STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment as a matter of law when the non-moving party fails to make such a showing. *Dodson v. Coatesville Hosp. Corp.*, No. 18-3065, --- Fed. App'x ----, 2019 WL 2338461, *2 n.6 (3d Cir. June 3, 2019) (quotation omitted).

"If a party fails to … properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion; [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(2)-(3). Thus, a moving party is not entitled to summary judgment as a matter of right if the adverse party does not respond. *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (quotation omitted). Instead, the court must conduct a full analysis to determine "whether the moving party has shown itself to be entitled to judgment as a matter of law." *Id.*

## III. ANALYSIS

Because Williamson was incarcerated when he filed this suit, the Prison Litigation Reform Act ("PLRA") required him to exhaust his administrative remedies before he filed this suit. He did not do so, as the undisputed facts establish. Therefore, the PLRA bars his remaining claim.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] plaintiff's status as a prisoner for purposes of the PLRA is judged as of the time he files his original complaint." *Defreitas v. Montgomery Cty. Corr. Facility*, 525 Fed. App'x 170, 176 (3d Cir. 2013). This requirement applies even though he was incarcerated at a prison other than the one where his claim arose. *See Williamson v. Wexford Health Sources, Inc.*, 131 F. App'x 888, 890 (3d Cir. 2005) (affirming grant of summary judgment for failure to exhaust administrative remedies where plaintiff was transferred to a different prison after filing grievance and then failed to appeal an adverse decision); *Dade v. Gaudenzia DRC, Inc.*, No. 13-cv-1381, 2014 WL 47766, *4 (E.D. Pa. Jan. 7, 2014) (determining that plaintiff was subject to the PLRA

and required to exhaust his administrative remedies where—at the time he filed his complaint—plaintiff was incarcerated in a prison other than the facility where his claims arose).

Exhaustion is a non-jurisdictional threshold issue. *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (quoting *Small v. Camden Cty.*, 728 F.3d 265, 270 (3d Cir. 2013)). The court determines whether a plaintiff exhausted his administrative remedies by "'evaluating compliance with the prison's specific grievance procedures,' and analyzing whether the procedures were 'available' to the inmate." *Id.* (quotation and citations omitted). The court may resolve factual disputes relevant to exhaustion without the participation of a jury. *Id.* (citation omitted). Before engaging in such fact-finding, however, the court must provide the parties with notice that it will consider exhaustion in its role as fact finder and provide them an opportunity to respond with relevant materials. *Id.* (same).

Once the defendant satisfies its burden to establish that an inmate failed to utilize administrative remedies, "the onus falls on the inmate to show that such remedies were unavailable to him." *Id.* at 268 (same). There are generally three situations "'in which an administrative remedy, although officially on the books,' is not 'available' because it is 'not capable of use to obtain relief': (1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 266-67 (quotations omitted).

When Williamson filed his original complaint on August 20, 2018, he was confined in the George W. Hill Correctional Facility in Delaware County, Pennsylvania. (ECF No. 14-1 ¶¶ 33-34.) Thus, Williamson is subject to the PLRA's exhaustion requirements. *See* 42 U.S.C. §

1997e(a); *Defreitas*, 525 Fed. App'x at 176. Following a pre-trial conference pursuant to Fed. R. Civ. P. 16(a), the Court issued a scheduling order that bifurcated discovery on the issue of exhaustion and set a separate deadline for dispositive motions on the issue, making it clear to the parties that the Court would resolve the issue of exhaustion without a jury. (ECF No. 13.) After Link filed her Motion for Summary Judgment, Williamson had an opportunity to submit relevant materials in opposition on the issue of exhaustion. Though Williamson's response, if any, was due by June 13, 2019, Williamson never submitted a response or any other materials for the Court to consider.

Link's motion and supporting materials demonstrate that Williamson failed to exhaust the administrative remedies available to him before bringing the instant lawsuit. Williamson knew how to file a grievance, as he had done so before, but he did not do so here. Williamson's failure was not due to an unavailable remedy because Link has established that grievance forms were routinely available in the prison.

## IV. CONCLUSION

When Williamson arrived at his new cell in C Block only to find the bottom bunk occupied, he was told to work it out with his cellmate and ended-up falling and injuring himself after trying to climb to the top. Though he reported his injuries to prison medical staff, Williamson never filed a formal grievance because his cellmate later ceded the bottom bunk to Williamson. By failing to submit a grievance and exhaust his administrative remedies, Williamson is barred from bringing his Eighth Amendment claim against Link, who is entitled to judgment as a matter of law on this remaining claim against her. Link's Motion for Summary Judgment will be granted, and an appropriate Order follows.

# ORDER

AND NOW, this 15th day of July, 2019, upon consideration of Defendant Cynthia Link's Motion for Summary Judgment (ECF No. 14), and for the reasons set forth in the Court's accompanying Memorandum, the Court **ORDERS** that Defendant's Motion for Summary Judgment is **GRANTED**, and judgment is entered in favor of Defendant on Plaintiff's remaining claim in Count I of his Amended Complaint. The Clerk of Court shall close this case for statistical purposes.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.